Our next case is Barragan v. Honeywell International Incorporated, number 25-2609. And we have Mr. Palenko again. Good morning again, your honors. Kai Palenko for plaintiff appellant. May I please reserve five minutes to rebuttal? Sure, and if I could suggest that if you could begin by stating whether there is anything appreciably different in this case versus the prior one we heard. Yeah, Honeywell has argued for the first time on appeal that the plan does not allow forfeitures to be used to pay down administrative expenses chargeable to participants. That is an argument that was not made in the district court. So because this is a court of review and not first view, only in extraordinary circumstances does the court consider issues raised for the first time on appeal. That's the Mullins case, 110 F4, 180. And we submit there's no extraordinary circumstances here. And so to the extent, you know, that argument should be remanded to the district court to rule on the argument in the first instance. If the court chooses to entertain the argument, it's rejected. It's a blatant misrepresentation of the plan's terms. The plan's forfeitures provision allows forfeitures to be used to, quote, defray administrative expenses of a plan, quote, without limitation. The plan's expense provision does not place any limitations on the use of forfeitures. It speaks to who must pay the expenses that are not defrayed by forfeitures. Honeywell suggests that, well, there are expenses that are chargeable to the department of energy and only those expenses can be defrayed by forfeitures. And it's implausible reading. I don't understand why anyone would design a plan that way, but that's just not what the language says. So I do think here that if the court does choose to reach that argument, it should reject it. One thing we haven't talked about, and I don't know if this court is interested in talking about it, is the prohibited transaction claim. And, you know, we have a breach of fiduciary duty claim and we have a prohibited transaction claim. And that is just really statutory construction. And from a textual perspective, you know, we think we're right. They argue that we need to allege a transaction as that term is defined in section 1106A, but we're suing under 1106B1, and that doesn't use the word transaction, 1106A does. The case they relied on was Lockheed versus Spink, Supreme Court case interpreting 1106A, did not even deal with 1106B. They say, well, you look at the title of 1106, or the heading, and it uses the word, you know, transactions. But Congress in other parts of 1106 specifically used the word transaction, but in 1106B1, it chose not to. It used the term deal with. And deal with cannot mean the same as transact with because they use the two phrases differently in that statute. Congress knew how to write a transaction requirement and it chose not to do so in 1106B1. And if this court disagrees with that position and thinks that we still must allege a transaction, we think we have because one of the transactions in 1106A is an extension of credit transaction. And here we're alleging that the plan extended Honeywell credit by allowing it to use, allowing Honeywell to use plan assets to reduce their contribution obligation owing to the plan. There's a Seventh Circuit case we cite in our brief that says such would be using plan assets toward an employer's contribution obligation would be an extension of credit. So we think even if a transaction is required, we've alleged book. Are there any questions specific about this case that you would like me to answer? Because I don't want to go over what I've already said. No, I'll yield the rest of my time and see you in rebuttal. Okay. Thank you. Thank you. Thank you. Good morning, your honors. May it please the court. My name is Michael Connealy and I represent Honeywell. I'll take Judge Freeman's invitation as well and start with what I view as the main fact-specific argument in this case. And that is the one Mr. Polenko mentioned about section 14.5 of our plan, which says, and about as clear of terms as I've seen in one of these cases, that all costs and expenses of administering the plan and managing the funds shall be borne by the participants and paid from their accounts. And that's at page 123 of the appendix. Now, Mr. Polenko said that we didn't make this argument below, which I don't understand as an argument because not only did we make this argument in opposing, sorry, in our motion to dismiss the amended complaint, but the district court agreed with it. At page 10 of the appendix, the district court notes that plaintiff's theory would result in an override of section 14.5 of the plan, mandating that administrative costs are to be borne by plan participants. So this was not only pressed, but ruled upon below. And of course, this court may affirm on the basis of any ground supported by the record in any event. Now, I would just like to circle back. I'm happy to discuss 14.5 further if the court has any questions, but otherwise I'll circle back to a few of the questions that your honors posed in the first argument that I think I might be able to shed some light on. Judge Kips, you asked several times about why employers put this kind of provision, the forfeitures provision, not the 14, set aside 14.5 for right now, just look at the forfeitures provision. And that's actually a fairly common provision in plans. And I think the reason to be perfectly honest is that it's a cue from Department of Treasury regulations. Your honor mentioned one of the Department of Treasury regulations, which does not of its own force apply to most defined contribution plans, but there are revenue rulings going back to before ERISA was around, that said that permissible uses of forfeitures include paying or offsetting employer contributions or deferring administrative expenses. And of course, those are the two things under section 1104A1 that ERISA specifically calls out as the two purposes for which plans ought to be administered providing benefits and deferring expenses. So I think the reason is historical and it's a common provision and why we've seen about a hundred of these cases now over just the past couple of years is because it's such a standard provision. And until- No, sorry for interrupting, but it's interesting to me because it strikes me that Judge Freeman asked you to open with kind of the differences between this case and the Siemens case. And isn't 14.5 a really big difference? No one's saying in Siemens that we've got a promise this clear that says you have to use plan costs and expenses are borne by the participants, not anything else. So there is a little discontinuity here because why then give the fiduciaries the option to offset costs if all costs have to be borne by the participants and beneficiaries? It's a little awkward there. Why are you giving a null set option? But I guess, so there's two questions embedded in this little thing. One, is 14.5 meaningfully different from Siemens? Your plan has it. Siemens doesn't seem to have something analogous. Just let me know your thoughts on that. And then two, what about the awkwardness of reading 14.5 with the option later to offset plan expenses by a fiduciary? So I'll confess I haven't studied in great detail the Siemens plan. And I know Mr. Yont argues that there's a distinction in his plan language too about certain expenses that may be paid using forfeitures and others that may not be. And maybe one is relevant to his case and maybe the other one's not. So I don't really wanna speak too much about the Siemens case, but I agree with your honors. I think underlying premise that section 14.5 is an important feature here that makes plaintiff's hill a lot steeper decline. And there are lots of cases that don't have language like 14.5 out there in the forfeitures universe right now. And I think that if you're construing 7.3 and even assuming we're in fiduciary duty land with respect to allocation of forfeitures, I think the fiduciary has to read 7.3, which is the general forfeitures provision in light of 14.5, which as the district court noted is the settler's instruction about who should be paying for the administrative expenses of the plan. And I don't think it could be a whole lot clearer. Now, I don't know that it's really a null set under 7.3 because there is this limited exception in 14.5 for certain administrative costs and expenses receivable or chargeable to the United States Department of Energy for FM&T participants. And that's Honeywell Federal Manufacturing and Technologies. And I haven't looked at the collective bargaining agreements. They're not in the record to know exactly how that might play out under 7.3 options to defray administrative expenses. But I certainly think you can't infer just from what we have in the complaint, given 14.5, that it was imprudent or disloyal to have participants bear the administrative expenses as 14.5, I think unequivocally requires. And so I think I covered both of your questions, Judge Phipps but if I missed anything, please let me know. Judge Freeman, you asked in the first argument, are employers amending their plans, I think to remove that option. And I can say, because my firm advises a lot of retirement plans that a lot of employers have done that. And I don't know how that could be better overall for plan participants. Mr. Polenko's presentation is that it's good for participants when they don't have to pay for administrative expenses and just taking that option out completely might be something that a prudent fiduciary would think, well, why would I go against what I know the settler wants for whether the settler's gonna pay for this particular benefit, pay for the administrative expenses when the likely response of the settler given his choice this year or its choice this year is just that from henceforth, I, the fiduciary will never have the option to pay for administrative expenses on behalf of participants. Again, that's not an obvious, I mean, it's not obviously in the best interests of participants, especially when you look beyond just the sliver in time that plaintiff's theory seems to be based on, you look over at the longer term of the plan and obviously retirement plans are meant to continue for decades into the future and into retirement. So I think a prudent fiduciary would look at all of those points and not just focus on being able to bring more money out this one year. And so that I think makes some sense to me, but if the allegations are the fiduciary didn't do any of that thinking, they just didn't go through that thought exercise, I kind of understand the prudent investor rule is kind of a show your work rule, right? You know, you have to show this is what I've done, this is how I've got there. It's not that you got the right answer as much as it is sometimes, have I shown that I've considered this option versus the other option? And so if the allegations might be, yeah, that in the end was okay, we've got a duty of prudence problem that, you know, you didn't show your work. What do you think? Could that be a duty of prudence problem? And then I guess at the end of the day, I kind of have a so what takeaway from that. If it is the duty of prudence problem, but you still made the right decision in the end, like, so what? Well, I think the so what is that defending an ERISA class action through discovery is a very onerous and expensive thing. And the Second Circuit in the St. Vincent case, I can't remember if that's cited in the briefs, but that's kind of the classic statement of this point. And the Supreme Court in Fifth Third was aware of these costs. And I think Mr. Wenger referred to some of it as well in his presentation that litigation is a real expense for an ERISA plan. And because some of this litigation is meritless, the 12B6 motion to dismiss has to be a valid screen to separate the meritless sheep, the sheep from the meritless goats to use the Supreme Court's colorable phrase. And here, I think your honor is right that it is a process-based claim, but plaintiffs, as I think most people recognize, don't have access to the fiduciary meetings, minutes or other direct insight into the process most of the time. And so the pleading standard that courts have adopted allows them to circumstantially raise an inference of imprudence of an imprudent process based on the ultimate result. But that ultimate result has to be something that is actually implausibly suggestive of imprudence. And when it's just the kind of conduct that is authorized by the plan that is consistent with regulations and that hundreds of plans around the country use all the time, that's not enough to get across that threshold. And so I think that's really the key point there. I see that I am almost out of time. If your honors have any questions, I'd be happy to answer them. Otherwise, I'll cede the microphone. Thank you. Thank you. Good morning again. Picking up where Mr. Kennedy left off, United States Supreme Court in Conkright versus Vermeer said very clearly that Congress sought when it created ERISA to create a system that is not so complex that things like litigation expenses will unduly discourage employers from offering ERISA plans in the first place. To Mr. Keneally's point, this is exactly what's happening in these cases. Whenever you have what's essentially discretion as a settler decision written into plan documents that then becomes what's essentially a litigation trap, you multiply that times what I believe is now triple digits of these cases pending across, you're gonna start seeing those litigation costs turning into problems ultimately for the employees who need to be taken care of in their golden years when employers start saying this is not worth the cost to do this anymore, particularly when we're not talking about bigger employers like the Honeywells and the Siemens of the world. Previously, when I was up here, we talked about two of the three problems with plaintiff's theory. The first is that it distorts the fiduciary duties in section 11 of four. The second was that it presumes that a fiduciary duty can augment or pardon me, alter settler decision. But the third, this is getting to Judge Phipps' point, is that their fiduciary duty claims basically take ERISA, which is a law of process and flip into a law that's based on liability, based on outcomes and recall what their theory is. There's discretion written into these plan documents. The outcome didn't turn out the way that we wanted. There's no connective tissue to suggest that something went wrong with that process. And we would submit that just breaking this down and bringing it back to typical 12B6, Taunley-Iqbal without an allegation, it is wholly conjectural. If that is their theory, there's nothing to actually suggest something went wrong with the process. In the last point, when it comes to that duty of prudence claim is ultimately we keep on coming back to the same question is what is promised under the plan documents to the extent that, and it was plaintiff's responsibility to prove that there was some loss to them, something that was owed to them in the plan documents. If they can't point to that, there's not a whole lot of process to show. So for the reason that we were talking about Judge Phipps is that the answer here is that the fiduciaries themselves comply with the plan documents. The plan documents did not command that this offset occur. And therefore there's no duty of prudence claim. So unless and until either the plaintiff's here or plaintiff's in another place prove more than just discretion written to the documents, we don't like the way the outcome turned out, they can't satisfy 12B6. If there are no further questions, we would ask the court to affirm the dismissals. Actually, can I ask a question? To what extent do you think that, because I know Judge Phipps has asked a couple of times about what's the purpose of including a language in these plans, if in general, the employer's not gonna use it to pay down administrative costs. To what extent do you think it's just reflecting statutory language, authorizing forfeited funds to be used one way or the other? Like, did this just become boilerplate language that folks put in? Or like what, from your vantage point, looking at these across the system and across the decades, your role for the government is the purpose of this boilerplate language showing up? We think that that's a fair assumption, Judge Mascot, is that probably, you know, given the fact that the Department of Treasury has made this available, to be very clear, we're not arguing that those regulations actually dictate the outcome here. There's a difference between the Treasury regs and the ERISA regs, but to answer your question directly, yeah, this was something that the federal government for years and years had approved of. It was something that they explicitly and affirmatively put into a regulation that was okay. So I don't believe there's much more of a safe harbor assumption than to look at what the Department of Treasury is allowing. So we would submit that probably what happened was this became something that was offered over and over again when these types of plans were created. It's an additional cherry on top of what is, you know, otherwise a pretty employee-friendly plan that didn't become an issue until this theory of liability started to take hold across the country roughly two or three years ago. Now, like I said, it is spreading like wildfire to the extent that that is going to affect not only the big companies of the world, the Siemens Corporation, the Honeywells, and the Ninth Circuit, HP, and some of the others across the country. It is going to start affecting the companies that can't actually afford to defend against class action litigation, particularly if just pleading, you know, fiduciary decision in the, pardon me, discretionary decision plan documents came out one way. If that opens the door to class action discovery, there is going to be a problem running down the pipeline in the future with companies that have to decide whether or not they're going to take care of their employers, employees in their golden years. We would submit that that was fundamentally a problem for America's workforce. So this language is often included more just as extra protective language, clarifying we can do one or the other, as opposed to a suggestion that the employer is going to, in every instance, sort of see that as an entitlement part of the plan. Absolutely. I mean, I think that it's just basic reading contract interpretation. It says that there's a choice to do one or the other. And based on that, if it says, we may do one thing or the other, and that one of those two things occurred, anyone who's reading a normal contract is going to say, well, I don't have a right to demand that you exercise your discretion in another direction because that was created as a settler decision, as a settler function. The duties of loyalty prudence can't trump that initial decision. So Judge Freeman, I really liked your opening question. I'm going to go back to it again in terms of what's different between the two cases from your perspective. And I guess my thought is you say that the most important thing to do is look at the plans. We have to look at the promise of the plan. That's your go-to in many ways. But this plan has 14.5, and the Siemens plan doesn't have an analog, and 14.5 says, yeah, participants are going to bear all the administrative expenses. If we're looking at the plan and we have one that says, yes, you're going to bear all the expenses, and the other one says, the cap on using these expenses is 1.5 million, you know, the cap on offset is 1.5 million. Don't you think that maybe we should begin to view those plans as a little bit different in this respect? Respectfully, Judge Fitz, we have decided, and we don't feel it's appropriate for us to take a position on the specific facts of the matter. From what we understand in both these plans, and this is what the theory of liability boils down to, is that there is no promise that that offset will occur in either one of these plans. In some of the minutiae and some of the differences there is beyond the scope of what the Department of Labor is here to talk about. But unless and until there is a guarantee, unless and until that offset becomes a benefit, the fiduciary duties under Section 1104 don't command that that offset occur. So you think there has to be an affirmative promise of using forfeitures for administrative expenses as opposed to the general promise to administer the plan in the best interest of the participants? You agree that that's the general, that's the general goal, administer the plan in the best interest of the participants and beneficiaries, but you say, no, that doesn't work. I need, in this instance, a specific promise, a specific almost command to pay administrative expenses. We wouldn't ask for anything more, Judge Fitz, than just the typical way in which the court would interpret any contract, is if you can look at the contract and see that there's a meeting of the minds that somehow suggests that these plan documents would command or would entitle, more than anything else, these beneficiaries to get that offset, unless and until they can actually say, we are legally entitled to do that, we are legally entitled to have these per the terms of the plan documents, they don't have a benefit to which 1104 would command that the offset occur. My understanding of their argument is not that they're saying in every instance the offset needs to be applied to, needs to be applied. They're saying that the fiduciary needs to consider the circumstances of each year in the class period and determine whether it is in the interest of the participants for that year to apply the offset or not. So the guarantee that they're given is that the fiduciary will apply ERISA to that provision of the plan. Is that your understanding as well? That is, but I think if you boil down their allegations, it still turns into a suggestion that the discretionary function is amended by the exercise of the fiduciary duties. And for purposes of actually making the inquiry that you're suggesting, Judge Freeman, once the fiduciary takes a look and says, okay, we have this additional funds by virtue of forfeiture, have we complied with our duty to make sure that everything promised under the plan documents is accounted for? That is what the duty of loyalty and duty of prudence dictate. What's accounted for in those plan documents don't extend to the offset the plaintiffs are demanding. And that's really how we sort of cabin the duty of loyalty and duty of prudence, sort of the outer bounds of how far that goes. And I think we've spent most of the argument time talking about the fiduciary duty and benefit maximization, maybe because opposing counsel led with that. But also if we're looking just in section 1104, fiduciary duties of title 29, I mean, it talks about the fiduciary discharging duties for the purpose of providing benefits and defraying reasonable expenses. So, I mean, would you also perhaps, if it's actually names defraying expenses and administration, maybe the fiduciary duty is not just boiled down to benefit maximization, but there's something else. And maybe this discretionary choice falls within that. And that suggests here, the fiduciary is not obligated to defray expenses in a way that maximizes benefits of the plan. I remind this reading now, what's your position? If I understand your question, Judge Mascot, if we're getting to the second part about defraying reasonable expenses and what effect that has, it's a different circumstance. Typically speaking, that's whenever you're terminating, that's basically an excessive fees case is how that provision has been interpreted. If there was a suggestion or some sort of allegation that the lawyers are being used or the trustee fees themselves were somehow too high, that's when that would come into play. But that particular provision has never been interpreted to suggest that this type of forfeiture allegation theory of liability has any purchase. We don't understand anyone in sort of across the grand scheme of these cases being brought relying on that provision. At the end of the day, though, what really does matter is what the Supreme Court has said, is that this is the decision to actually create a plan, how to give benefits in the first place, what sort of benefits to give, under what circumstances, so long as that doesn't sort of do something that is completely anathema to the provisions of risk itself. Those are settler decisions that the employer gets to make. And that as long as that discretion is written into the plan documents themselves, that's a settler decision that we would submit the court should not find the duty of prudence, duty of loyalty to Trump. Okay, thank you. Thank you. Thank you very briefly, your honors. I just like to circle back with one point my colleague just made, and that is, there needs to be a specific promise, a specific promise, a guarantee that the forfeitures will be used to pay the expenses in order to state a claim. I just don't see how you reconcile that with the Supreme Court's decision in Fifth Third. As I said before, there, that was an ESOP, an Employee Stock Ownership Plan. The promise was to invest in employer stock. The fiduciaries did that. Then a group of participants sued and said, you should have invested in something else because the employer stock was excessively risky or a bad investment. The Supreme Court unanimously said that states a prudence claim. So I don't know, I don't understand how you reconcile what he just said and what the Supreme Court said in Fifth Third. I do agree that this case is different than the Siemens case because of 14.5. I just disagree with the way 14.5 of the plan and 7.3 of the plan are being harmonized because 7.3 of the plan just says forfeitures can be used to defray administrative expenses of the plan without limitation. And so the way I read that is that absent defraying expenses with forfeitures, they must be charged to the participants under 14.5. Yeah, you know, just to tease out in the weeds, right? 14.5 says, shall be borne by the participants and paid from their accounts in the plan. That's, you know, that doesn't say, or possibly from forfeitures or possibly from anything else. It says you're doing it. There's just no, it's on you. Now, I don't know what the 7.3 does other than maybe Department of Energy, FMTs. I haven't really paid attention to that in reading the case. I don't understand that that's really the thrust of your cause of action, but the line is just so strong. Shall be borne by participants and paid from their accounts in the plan. That's tough, right? I mean, that kind of suggests that that's not gonna come from forfeitures. And again, I take your point, Your Honor. And I agree this case is different than Siemens, but when I read that together, 14.5 with 7.3, the way I read that is that all expenses must be paid by participants and shall be borne and paid from their accounts unless it's defrayed by forfeitures. So before you even get to who pays the expenses, you look to see, are we gonna defray these expenses with forfeitures? If we are, fine. Are there any expenses left? Those must be charged to the participants. That's the way I read those two provisions together. I understand there might be some room there to argue both ways, but I think that is the way you harmonize them is I know you have to read them so they both have meaning. And so I just don't understand why they would say you only could defray, use forfeitures to defray the expenses chargeable to the Department of Energy. It doesn't make sense to me. And why wouldn't they just say that in the forfeiture provision itself, in 7.3? I don't know, but I think it can be, like my staring at these two says it can be harmonized. You've got to carve out for Department of Energy and then you have an allowance in 7.3 to use the expenses for that, to use the forfeitures for that. That to me fixes the two. I don't mean to give my reading, but can I just pivot to this notion that ERISA is process-based and you're in this business of bringing complaints under ERISA. And it strikes me that there is a legitimate information asymmetry. You aren't at the meetings when this stuff happens. And so that makes it much harder. This isn't like the SEC where you have to publish a 10-Q and say all of these other things. You aren't there when these decisions are made. And so you have to compete with that information gap. But we're looking at 12.B.6, it doesn't have special pleading rules for ERISA plaintiffs. And so how do we get to this plausibility if this could be, if there's a hypothesized valid use? I guess what I'd say is in the nursing home example, there's a hypothesized valid use for sending your grandparent to nursing home B. Maybe it was just closer to all of the children who wanted to visit. It's a horrible deal, but it's closer. So as long as there's a hypothesized reason, don't you have to kind of negate that hypothesized reason you're pleading or do something else? I mean, it strikes me as tough. It's tough. It's almost like medical device litigation where you have to say, gee, we don't know anything. That's all covered by patents, but we're gonna claim that there was a problem here. What do you do? Because how do you plead this successfully kind of against that backdrop when you don't know the information? I mean, I think if we adopted their standard, we wouldn't be able to. The matter case from this court suggests that there's an inference based on the outcome because we weren't there. We weren't in the room. We don't know why they decided to do what they did. We don't know what they actually discussed, what factors they considered. And the matter case as a pleading matter, I think it was a breach of fiduciary duty case, said the defendant has to come forward with an explanation that is either more obvious, more likely, or I can't remember the other word, but something to rebut essentially this presumption that they did it for an unlawful reason. And I just wanna circle back with something you said just a minute ago. Yes, we don't say that they used forfeitures for an impermissible purpose. The statute allows plan assets to be used for one of two purposes. They could pay plan benefits, they could, or pay reduced expenses. That's fine, but the standard is which one is best for participants in that situation? Among the two lawful purposes, you have to pick the best one. You can't just pick any purpose. Oh, okay, or any one, that wouldn't make any sense. The standard is you have to act in the best interest of participants. And we allege, plausibly we believe, that they haven't done so here based on the fact that over a period of many years, they chose zero forfeitures to use toward plan expenses and all $30 million or more to offset their contributions. I guess I just don't understand that argument still, because it's like you're saying you have to do something external to the contract to maximize benefits. But why couldn't I make the same argument? Oh, the statute would permit the employer to make a 10% match. He has a choice. Well, he has to do what's in the benefit of the beneficiaries. He didn't make the 10%, he just did the 6%. That's a fiduciary duty violation. No, I don't think so. Well, I mean, if this is not a contractually binding decision, I just still don't understand how you're dragging it in to this fiduciary duty to maximize benefits. It all comes down because it's a plan asset. If it wasn't a plan asset, if the employer was just saying, we're gonna contribute less this year, that's a settler decision. There is no breach of fiduciary duty. It's the fact that these are plan assets, they must be used in the participant's best interest. Plan and the system has the assets and it has the administrative costs. And here the contract is allowing there to be a choice in terms of how those things are allocated. That's right, but ERISA imposes an implied term. You have to exercise that discretion in the best interest of participants. But that I think is what the regulatory and statutory permission of permitting folks to have a choice, it takes that out of that. Are you talking about the tax authorities? I'm talking about the fact that the plan itself says that there's a choice. So there's no guarantee. So it cannot fall within that same lump fiduciary duty that you keep trying to fall back on. Yeah, I don't think that's quite right, Your Honor. I think- Well, obviously, but that's what the litigation really, I think ultimately comes down to. I think what it comes down to, if it's a plan asset, then necessarily fiduciary duty is attached. There are no degrees or no spectrum of fiduciary duties. It's an all or nothing concept. And because these are plan assets and not the employer's money, then the fiduciary was required to do what was best for the participants. But your option does not permit really true discretion in the contractual language and the options that are set out at the start. Well, I'm not saying that that's ERISA. The standard is, did you act in the best interest? What is in the best interest is gonna be based on the facts and circumstances of every case. The Department of Labor has identified a few instances where it might be in the best interest to do what they did. We just allege different facts here. And those facts, obviously, on a motion to dismiss must be accepted as true and construed in our favor. And yet, even on two cases with two different sets of facts, your arguments are the same. So I don't- Because with the exception of the 14.5 in this plan, is it 14.5? The cases are, in my view, indistinguishable. Because your view is so broad. I don't know that it's so broad. It's just the standard of ERISA. You have to act in the best interest of participants when allocating- Because that's what the plan says. Yeah, well, of course. The plan could say forfeitures must be used to reduce contributions. We wouldn't be here. It's because it gives a fiduciary, which can entrust the fiduciary with a choice. And that is the quintessential fiduciary function. You have to exercise discretion. A fiduciary has to exercise discretion in the best interest of participants. That's black letter law that's been since the inception of ERISA. We're just saying, my question is, we're just getting at the fiduciary duty against the backdrop of the contract language. Yeah, I get it. If the contract had said, you must use forfeitures for one purpose, and they did that, we wouldn't be here. But the contract is an option, and ERISA requires them to pick the best option. Thank you. Anything else? I think that's all. I appreciate your time. Thank you very much. You're welcome.